

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**SOUTHERN DISTRICT OF CALIFORNIA**

11

12    GUSTAVO RAMIREZ,                               CASE NO. 10cv1292-WQH (MDD)

13                              Plaintiff,            **REPORT AND**
                                                      **RECOMMENDATION THAT**
14          vs.                                       **DEFENDANTS' MOTION TO**
                                                      **DISMISS PLAINTIFF'S SECOND**
15                                                    **AMENDED COMPLAINT BE**
                                                      **GRANTED IN PART AND DENIED**
16    GEORGE GIURBINO; LARRY SMALLS;                  **IN PART.**
      E. SILVA; M. TAMAYO; E. DUARTE;
17    JOHN ZINNA; JAMES MORENO,                       [ECF No. 20]

18                              Defendants.

19
            This Report and Recommendation is submitted to United States District Judge William Q.
20
      Hayes pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.3 of the United States District
21
      Court for the Southern District of California
22
            **I.      PROCEDURAL HISTORY**
23
            On June 14, 2010, Gustavo Ramirez ("Plaintiff") filed a Complaint against George
24
      Giurbino, et al ("Defendants"), for violating his civil rights under 42 U.S.C § 1983.  (Doc. No. 1).
25
      On July 19, 2010, Plaintiff filed a First Amended Complaint.  (Doc. No. 4).  On November 8,
26
      2010, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint.  (Doc No. 15).
27
      On November 19, Plaintiff filed a Motion to Amend his First Amended Complaint (Doc. No. 16)
28
      which was granted on December, 16, 2010.  (Doc. No. 18)  Also on December 16, 2010, Plaintiff

1  filed his Second Amended Complaint ("SAC").  (Doc. No. 19).  As a result, Defendants' Motion

2  to Dismiss was terminated and Defendant filed a Motion to Dismiss Plaintiff's Second Amended

3  Complaint (Doc. No 20).  Plaintiff filed a Response in Opposition ("Opposition") on January 13,

4  2011.  (Doc. No. 21).  On January 21, 2011, Defendants filed a Reply to Plaintiff's Response

5  ("Reply").  (Doc. No. 22).

6          **II.        STATEMENT OF FACTS**

7          The facts are taken from the parties' pleadings and are not to be construed as findings of

8  fact by the court.

9          Plaintiff's SAC alleges that his civil rights were violated during his incarceration at

10 Calipatria State Prison.  SAC at 1.  He claims that the Defendants improperly classified him as a

11 gang member, which resulted in his placement in a Security Housing Unit ("SHU") and a loss of

12 privileges.  Id.  Plaintiff contends that the process by which he was determined to be a gang

13 member is flawed, and that, in any event, Defendants failed to comply with their own processes by

14 relying on improper information.  Id. at 3.  First, Plaintiff asserts Defendants failed to follow the

15 "single source" rule which, as discussed below, he does not define.  Id. at 3.  Second, Plaintiff

16 asserts Defendants improperly relied on confidential information, and then failed to adequately

17 corroborate that information.  Id.  Furthermore, Plaintiff asserts that Defendants improperly

18 elicited information by using Mayan cultural symbols during its gang validation process.  Id.

19         The validation process resulted in Plaintiff being classified as a gang member.  Plaintiff

20 contends that this process was not properly supervised, and that no investigation was made into the

21 veracity of the outcome.  Id. at 5.  Plaintiff asserts that he was then placed in an SHU, where he

22 was not allowed to participate in training or educational activities, not allowed contact visits, and

23 denied phone access.  Id.

24         **III.       LEGAL STANDARD**

25         A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the

26 complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Federal Rule of Civil Procedure

27 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to

28 relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of

what the ...claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 (2007) (internal citations omitted).  Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell v. Twombly</u>, 550 U.S. 544, 555-56 (2007).  Thus, while specific detail is not required, every complaint must, at a minimum, plead "enough facts to state a claim for relief that is plausible on its face." <u>Id.</u> at 547; <u>Weber v. Dep't of Veterans Affairs</u>, 521 F.3d 1061, 1066 (9th Cir. 2008).

The court must assume the truth of the facts which are presented and construe all inferences from them in the light most favorable to the non-moving party. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002).  A <i>pro se</i> party's pleadings should be construed liberally.  <u>Id.</u> However, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." <u>Bell</u>, 127 550 U.S. at 555. Thus, the court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001) (internal citation omitted).  Furthermore, the court may not "supply essential elements of the claim that were not initially pled." <u>Ivey v. Bd. of Regents of the University of Alaska,</u> 673 F.2d 266, 268 (9th Cir. 1982).

## IV.  DISCUSSION

### A.   <u>Count One: First Amendment Claims  Against Defendants Silva, Duarte, Mitamayo, Zinna, and Moreno</u>

Count One of Plaintiff's SAC asserts that Defendants E. Silva, E. Duarte, M. Tamayo, J. Zinna, and J. Moreno, personnel involved in Plaintiff's gang validation process, violated his Due Process and First Amendment rights by classifying him erroneously as a gang member and placing him in SHU.  SAC at 1-5.  First, Plaintiff claims that the manner in which information was collected for his evaluation as a gang member was improper.  SAC at 1.  Specifically, Plaintiff asserts that these Defendants relied on an informant who was not reliable, used symbols that carried religious significance to Plaintiff in order to elicit information, contacted third parties

without Plaintiff's knowledge, used outdated information, and failed to follow the "single source rule." Id. at 1-3.  Second, Plaintiff asserts that these Defendants used an improper standard in determining that he was a gang member.  Id.  Finally, Plaintiff alleges that the terms of his confinement in SHU were improper.  Id.  Plaintiff does not specify which of these actions he believes violate his First Amendment rights and which violate his Due Process rights.

In their Motion to Dismiss, Defendants do not contest the sufficiency of Plaintiff's Due Process claims.  (Doc. No. 20).  Defendants do challenge, however, the sufficiency of Plaintiff's First Amendment claims.  Id.  Defendants argue that even if Plaintiff  adequately specified regulations or procedures relating to his classification as a gang member that he believed violated the First Amendment, such regulations or procedures would be constitutional as they are reasonably related to a legitimate penological interest.  Id.   In his Opposition to the Defendants' Motion to Dismiss, Plaintiff counters that even if the prison regulations are reasonably related to a legitimate penological interest, they are invalid because they lack a clear standard by which they can be applied.  (Doc. No. 21).  In their Reply, Defendants contend that Plaintiff's Opposition misinterprets the standard for a First Amendment violation.  Id.

### 1.     First Amendment Claims

In his SAC, Plaintiff does not specify how the gang validation process violates his First Amendment rights.  Although stating his intention to bring a First Amendment claim, Plaintiff only describes his Due Process claims.  SAC at 3-5.  Plaintiff does not allege any specific facts that would, if proved, constitute a First Amendment violation nor describe how each Defendant personally participated in a First Amendment violation.  Although the Court must accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.  Ivey, 673 F.2d at 268.  Furthermore, though the Court must construe a *pro se* plaintiff's filings liberally, the Court cannot supply missing facts or essential elements of a claim.  Id.

Accepting the allegations in Plaintiff's SAC as true, as this Court must do, Plaintiff has merely described the prison's process for classifying a prisoner as a gang member without stating with any specificity which regulations or practices constitute a First Amendment violation.  SAC

at 1.  Even construed liberally, these conclusory statements are insufficient to survive a motion to dismiss.  Sprewell, 266 F.3d at 988.  Thus, Plaintiffs First Amendment claims against the Defendants listed in Count One of his SAC fail.

Even if Plaintiff had described how the prison regulations and procedures implicated the First Amendment, his First Amendment claims would not necessarily survive.  When a prison regulation impinges on an inmate's constitutional rights, such regulation is valid so long as it is reasonably related to a legitimate penological interest.  Turner v. Safley, 482 U.S. 78, 88 (1987).  This is a low level of justification which "is necessary if prison administrators..., and not the courts [are] to make the difficult judgments concerning institutional operations."  Id. (quoting Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 128 (1977)).  Defendants, in their Motion to Dismiss, argue that the regulations referenced by Plaintiff are related to the prison's interest in managing the danger of prison gang activity.  (Doc. No. 20-1 at 2).  Identifying prison gang members in order to advance prison and prisoner safety has been clearly established as not only a legitimate penalogical interest, but a compelling one.  Warsoldier v. Woodfood, 418 F.3d 989, 997 (9th Cir. 2005).  The measures described by Plaintiff in his complaint are information gathering measures intended to identify gang members.  As such, they are reasonably related to the state's compelling interest in prison safety and pass constitutional muster.  Id.

In his Opposition, Plaintiff argues that the First Amendment mandates that "there must be a clear line or standard applied" to the gang validation process, and that no such standard is present here.  (Doc. No. 21 at 2).  Plaintiff cites Rios v. Lane, 812 F.3d 1032, 1038 (11th Cir. 1987) in support of this proposition.   In Rios, a prisoner challenged disciplinary sanctions brought against him after he passed a note card containing a list of Spanish radio stations around the prison.  812 F.2d at 1034.  While the court in Rios found that a higher constitutional standard applied to direct prohibitions on political speech, the court still found that no First Amendment violation had occurred, as the regulation bore a sufficient relationship to the compelling interest of managing prison gang activity.  Id. at 1036.  Furthermore, the court distinguished between the actual censorship of speech imposed on the plaintiff as a result of the prison regulation,  and the question of whether the regulation itself was unconstitutionally vague.  Id.  The court identified the latter as

1 a Due Process complaint, and not a First Amendment one.  Id.  Thus, Rios does not rescue

2 Plaintiff's First Amendment claims.

3      Plaintiff alleges also that the Defendants violated the "single source" rule.  Plaintiff does

4 not provide any basis to determine what the "single source" rule is, from where it derives and how,

5 if it exists and applies in this case, it was violated by these Defendants.  To the extent that Plaintiff

6 is asserting a First Amendment violation regarding the "single source" rule, it is denied.

7      Plaintiff's complaint does not adequately ascribe any violation of his First Amendment

8 rights.  Rather, Plaintiff's challenges to his placement in SHU as a result of his validation as a

9 gang member are more appropriately analyzed as part of Plaintiff's Due Process claims.

10 Accordingly, the Court **RECOMMENDS** that Defendant's Motion be **GRANTED** as to

11 Plaintiff's First Amendment claims against the Defendants listed in Count One of Plaintiff's SAC.

12 Plaintiff should be given leave to amend those claims.

13           **B.    Count Two: Claims Against Larry Smalls and George Giurbino**

14      In Count Two of his SAC, Plaintiff alleges that Defendants Larry Smalls, the warden at

15 Calipatria State Prison, and George Giurbino, the prison supervisor, violated his First Amendment

16 rights, his Eighth Amendment rights, and his Due Process rights.  SAC at 5.  Defendants move to

17 dismiss all causes of action against both Defendants named in Count Two of Plaintiff's SAC.

18 (Doc No. 31-1).

19               **1.    First Amendment Claims**

20      As in Count One of Plaintiff's SAC, Count Two fails to allege facts that would give rise to

21 a First Amendment claim.  While Plaintiff asserts in his Reply that the prison regulations regarding

22 validation of gang members violates the First Amendment, this mere conclusory statement is

23 insufficient to survive Defendants' Motion to Dismiss.  Sprewell, 266 F.3d at 988.  Accordingly,

24 the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's

25 First Amendment claims against the Defendants' listed in Count Two of his SAC**.**  Plaintiff should

26 have leave to amend those claims.

27 / / /

28 / / /

1

### 2.    Eighth Amendment Claims

2    In addition to the First Amendment claims discussed above, Plaintiff also alleges that

3    Smalls and Giurbino violated his Eighth Amendment rights by placing him in SHU for an

4    indeterminate time.  SAC at 5.  Plaintiff describes SHU as a "prison within a prison" where he is

5    extremely isolated and deprived of most of his privileges.  Id.  Defendants contend that the

6    conditions of the SHU have been previously upheld as constitutional, and thus Plaintiff's claims

7    should be dismissed as a matter of law.  (Doc. No. 20-1 at 6).

8    The Eighth Amendment protection against cruel and unusual punishment ensures that

9    prisoners are kept in conditions compatible with "civilized standards, humanity and decency."

10   Estelle v Gamble, 429 U.S. 97, 102 (1976).  Prison officials have a duty to ensure that prisoners

11   are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  See

12   Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In order to state a claim under the Eighth

13   Amendment, an inmate must first show that he suffered a deprivation or injury that was

14   "objectively, sufficiently serious[.]"  Id. at 834 (internal citations omitted).  Second, the plaintiff

15   must show that the prison officials had a "sufficiently culpable state of mind" in that they acted

16   with "deliberate indifference to a substantial risk of serious harm to an inmate."  Id.

17   First, Plaintiff has not stated an objectively serious deprivation.  There is nothing *per*

18   *se* improper about segregating inmates, even for indeterminate terms.  Hutto v. Finney, 437 U.S.

19   678, 685-87 (1978); Toussaint v. Yockey, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984).  Rather,

20   prison officials have broad discretion to determine the specific conditions of segregation.  Farmer,

21   511 U.S. at 833.  They may impose conditions that are "'restrictive and even harsh'" Id. (quoting

22   Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  While some courts have found that the terms of a

23   SHU can violate the Eighth Amendment when applied to certain mentally ill inmates, Plaintiff has

24   not alleged such a condition.  Madrid v. Gomez, 889 F. Supp. 1146, 1243 (N.D. Cal. 1995).  While

25   Plaintiff asserts that he experienced an "atypical" hardship, he has not alleged sufficient facts to

26   support his claim.  His conclusory statement is insufficient to survive Defendants' Motion to

27   Dismiss.  Ivey, 673 F.2d at 268; Fed. R. Civ. P. 12(b)(6).  Thus, Plaintiff's Eighth Amendment

28   Complaint fails the "objectively serious" requirement of an Eighth Amendment violation.

Second, even if Plaintiff had satisfied the objective requirement, his claim would still fail. In order to satisfy the second prong of his Eighth Amendment Claim, Plaintiff must show that each Defendant was "deliberately indifferent" to a substantial risk of harm to Plaintiff. Farmer, 511 U.S. at 825. Deliberate indifference requires that an official knows of and disregards an excessive risk to inmate health or safety. Id. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. Farmer, 511 U.S. at 837. "A plaintiff may make the factual showing that a prison official had the requisite knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence." Id. at 842 (internal citations omitted). Moreover, "[t]urning a blind eye to the relevant surrounding facts will not shield a prison official from liability." Swan v. United States of America, 159 F. Supp. 2d 1174, 1182 (N.D. Cal 2001). "'If the evidence shows that a [prison official] merely refused to verify underlying facts that he strongly suspected to exist [...], liability may be imposed." Id. at 1182 (citing Farmer, 511 U.S. at 843, n. 8).

Here, Plaintiff has not alleged that either Smalls or Giurbino were aware of a specific risk to Plaintiff as a result of Plaintiff's placement in SHU. As discussed above, Plaintiff has not even described a particular risk of harm associated with his placement in SHU. Rather, Plaintiff merely details the conditions of confinement in SHU which, while unpleasant, are not unconstitutional. Rhodes, 452 U.S. at 347. Thus, Plaintiff's claim also fails the subjective element of an Eighth Amendment claim. Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** with regard to Plaintiff's Eighth Amendment claims against Smalls and Giurbino in Count Two of his SAC . Plaintiff should be given leave to amend these claims.

### 3.   Due Process Claims

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process rights, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id.

As an initial matter, Plaintiff's claims in Count Two of his SAC are primarily directed at Defendants in their supervisory capacity. In the SAC, Plaintiff asserts that Smalls "is responsible

for the SHU imposed on Plaintiff[.]" SAC at 5.  Plaintiff alleges that Smalls failed to make an independent investigation into the validation process, and that he failed to "properly ensure his staff followed Due Process guidelines and properly train his staff." SAC at 6.  Plaintiff also asserts that Giurbino was "responsible" for his placement in SHU.  Id.  Plaintiff states that Giurbino failed to properly train his staff, resulting in improper application of prison policy.  Id. In their Motion to Dismiss, Defendants assert that these claims are improper as they are based on theories of vicarious liability not available to a plaintiff's in a § 1983 action.  (Doc. No. 21-1).  In his Opposition, Plaintiff clarifies that Smalls "signed off on the SHU" and did not "ensure Due Process."  Opp. at 3.  Plaintiff also reasserts that Giurbino "must ensure Due Process."  Id.

     Defendants are correct that an action under § 1983 cannot proceed on a theory of *respondeat superior* because vicarious liability is inapplicable.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009), __ U.S. __.  Rather, a Plaintiff in a § 1983 action must plead that each defendant, through his own actions, subjected him to an unconstitutional deprivation of rights.  Id.  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, when he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Thus, Plaintiff's conclusory assertions that Smalls "is responsible for the SHU" and "failed to ensure his staff followed Due Process guidelines" are inadequate under Iqbal.  129 S.Ct. at 1948.  Similarly, Plaintiff's assertion that Giurbino was "responsible" for his placement in SHU does not allege specific facts of Giurbino's personal involvement, and is likewise deficient under Iqbal.  Id.

     As for Plaintiff's contention, that Smalls and Giubino failed to train their staff, although a cognizable theory of § 1983 liability, it still fails in this case.  A supervisor may be liable, as an individual, if his failure to train subordinates amounts to deliberate indifference.  Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  A plaintiff must show that the failure to train resulted from the defendant's "deliberate" or "conscious" act, and that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.  Canell, 143 F.3d at 1213; Redman v. County of San

1   <u>Diego</u>, 942 F.2d 1435, 1446-47 (9th Cir. 1991).

2         Here, Plaintiff has not pled any facts that explain how Smalls failed to train his

3   subordinates, or how this failure led to unconstitutional activity.  Additionally, regarding Giurbino,

4   he merely states that Giubino did not teach his staff what "artwork or symbols" are permitted in

5   the validation process.  SAC at 6.  He does not show any casual connection between Defendants'

6   failures to train and unconstitutional conduct.  Furthermore, Plaintiff has not alleged any facts

7   showing that the failures to train were deliberate acts.  Even affording Plaintiff's complaint a

8   liberal reading, as this Court is required to do, Plaintiff's mere conclusory contention regarding

9   Defendants' failures to train cannot survive Defendants' Motion to Dismiss.  <u>Canell</u>, 143 F.3d at

10   1213; Fed. R. Civ. P. 12(b)(6).

11         As to Giurbino, Plaintiff has not identified any specific act that resulted in the alleged

12   Constitutional violations.  Accordingly, the Court **RECOMMENDS** that Defendants' Motion to

13   Dismiss be **GRANTED** as to all claims against Giurbino.  Plaintiff should be given leave to

14   amend his claims.

15         As to Warden Smalls, Plaintiff alleges that Smalls himself imposed the SHU, and that

16   Smalls accepted the validation at "face value" without performing an independent investigation.

17   SAC at 5.  In their Motion, Defendants contend that Smalls did not participate in the validation

18   because the actual decision is made by the Institutional Classification Committee ("ICC"), and that

19   while Smalls' is a member of the ICC, his role is merely supervisory.  Reply at 3.  Furthermore,

20   Defendants assert that even if Warden Smalls had a duty to perform an independent investigation

21   into the accuracy of Plaintiff's validation as a gang member, he would be entitled to qualified

22   immunity on that issue.  (Doc. No. 20-1).

23         Defendants detail the prison procedures regarding a prisoner's validation as a gang member

24   and placement in SHU, and contend that Warden Small's role in this process is minor and

25   "administrative."  Reply at 3.  However, in a motion to dismiss, the court must accept the facts as

26   presented in the complaint as true (<u>See</u> Fed. R. Civ. P. 12(b)(6)) and factual challenges to the

27   complaint have no bearing on the legal sufficiency of the action.  <u>Lee v. City of Los Angeles</u>, 250

28   F.3d 668, 688 (9th Cir. 2001).  As the facts are presented in the SAC, Plaintiff has stated a

plausible claim that Warden Smalls was personally involved in the decision to validate Plaintiff as a gang member and place him in SHU.[1]  Furthermore, Plaintiff alleges that Warden Smalls did so despite ample evidence that the validation was conducted improperly and based on false or unreliable information.  SAC at 5.  Thus, Plaintiff has provided "enough facts to state a claim for relief that is plausible on its face."  Id. at 547; Weber, 521 F.3d at 1066.  Because Plaintiff has described Warden Smalls' personal participation in the events at issue, the Court proceeds to analyze the substance of his claim.

In their Motion, Defendants do not discuss the substance of Plaintiff's Due Process claim against Warden Smalls, but rather contend that even if Smalls did not perform an independent investigation into the validation process, he is entitled to qualified immunity on that issue.  (Doc. No. 20-1).  In his Opposition, Plaintiff counters that qualified immunity is not properly determined in a Rule 12(b)(6) motion.  Opp. at 3.  In their Reply, Defendants assert that Plaintiff's argument is based on old law, and that immunity should be determined at the earliest possible stage.  Reply at 3.

Qualified immunity protects "government officials... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity does not protect a defendant when: (1) the defendant's action violated a federal constitutional right; and (2) the right was clearly established at the time of the conduct at issue.  LSO, Lt. V. Stroh, 205 F.3d 1146, 1157 (9th Cir. 2000).  A qualified immunity defense is generally not amenable to a motion under Rule 12(b)(6) because facts necessary to establish an affirmative defense generally must be shown by matters outside the complaint.  See Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) (holding that, in light of court's duty to accept allegations in the complaint as true, a finding of qualified immunity in a motion to dismiss is

---

[1]Defendant has also provided the Court with the relevant prison regulations detailing what role Warden Smalls plays in the gang validation process.  Reply at 3.  Defendants ask the Court to take judicial notice of these regulations and contend that they show that Smalls had no role in the imposition of the SHU.  Id.  While the Court can take judicial notice of these regulations, doing so does not refute Plaintiff's claim.  Factual challenges to the complaint have no bearing on the legal sufficiency of the action.  Lee, 250 F.3d at 688.

inappropriate).  While a ruling on immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive[,]" (Saucier v. Katz, 533 U.S. 194, 199 (2001)), the court is usually "not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant].  Those issues must be resolved at summary judgment or at trial." Id.; see also Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001).

Defendants are correct that, in some cases, qualified immunity can be determined in a motion under Rule 12(b)(6).  In Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010), the Ninth Circuit emphasized that qualified immunity is "a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." (internal citations omitted).  Therefore, when the record is clear that the official had a reasonable belief that his conduct was lawful, a court may properly dismiss a claim on the basis of qualified immunity.  See Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

Here, Plaintiff has alleged that Smalls deliberately placed him in SHU, even though Smalls should have known that the validation of Plaintiff as a gang member was improperly conducted and based on false and/or unreliable information.  SAC at 5.  This deliberate action would violate the second prong on the qualified immunity analysis, as no official could believe such conduct to be reasonable or lawful.  See LSO, Lt., 205 F.3d at 1157.  As stated above, while Defendants provide a detailed assessment of Smalls' role in the validation process and argue that he did not commit an intentional act, this Court cannot consider those facts in a motion to dismiss.  Lee, 250 F.3d at 688.  Rather, the Court must accept all allegations in Plaintiff's Complaint as true.  Id. Based on those allegations, it is not clear that Smalls held a reasonable belief that his actions were lawful or reasonable.  Thus, the Court cannot, at this time, find that qualified immunity applies. Harlow, 457 U.S. at 818.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's Due Process claim against Smalls listed in Count Two of his SAC.

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.      CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED**:

1) Defendants' Motion to Dismiss Plaintiff's First Amendment Claims against the Defendants listed in Count One of his Second Amended Complaint be **GRANTED,** and Plaintiff given leave to amend those claims.

2) Defendants' Motion to Dismiss Plaintiff's Due Process Claims against the Defendants listed in Count One of his Second Amended Complaint be **DENIED**.

3)  Defendants' Motion to Dismiss Plaintiff's First Amendment Claims against the Defendants listed in Count Two of his Second Amended Complaint be **GRANTED**, and Plaintiff given leave to amend those claims.

4) Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claims against the Defendants listed in Count Two of his Second Amended Complaint be **GRANTED**, and Plaintiff given leave to amend those claims.

5) Defendants' Motion to Dismiss Plaintiff's Due Process Claims against the Defendants listed in Count Two of his Second Amended Complaint be **GRANTED** as to Defendant Giurbino and **DENIED** as to Defendant Smalls.  Plaintiff should be given leave to amend his claim against Giurbino.

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988).  Any party may filed written objections with the court and serve a copy on all parties by **June 15, 2011**.  The document shall be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed by **June 24, 2011**.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

- 13 -

1    The parties are advised that failure to file objections within the specified time may waive

2 the right to raise those objectins on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153

3 (9th Cir. 1991).

4    **IT IS SO ORDERED.**

5 DATED:  May 24, 2011

6

7                                            Mitchell D. Dembin
                                             **Hon. Mitchell D. Dembin**

8                                            **U.S. Magistrate Judge**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28